Gene SIMS, Appellant,

v.

**BOARD OF EDUCATION OF JEFFERSON COUNTY, KY., a corporation, et al., Appellees.**

Court of Appeals of Kentucky.

May 11, 1956.

Richard I. McIntosh, Woodward, Hobson & Fulton, Louisville, for appellant.

Lucian L. Johnson, James W. Stites, Louisville, for appellee.

WADDILL, Commissioner.

On this appeal we affirm the judgment of the Jefferson Circuit Court, Chancery Branch, Second Division, and adopt the opinion of Judge Stuart E. Lampe, which reads as follows:

"This is an agreed submission of a controversy pertaining to the constitutionality of House Bill No. 404 of the regular session of the 1956 General Assembly. This Bill constitutes enabling legislation authorizing any Board of Education in any County containing a city of the first class to impose occupational license fees not exceeding one-half of one percent on wages, salaries, and other earnings of individuals and on net profits of businesses. The Bill provides, however, that no such license fees may be imposed by any school board unless an election is held and a majority of those voting in the school district approve of the authority of the board to levy the occupational tax.

■ "Several constitutional questions arise. At the outset, I should like to comment that it is not the Court's function to pass upon the wisdom or the expediency of legislation. Under our doctrine of separation of powers, that duty rests with the Legislature. Only in the event the legislation conflicts directly with a mandate of the Constitution should the Courts interfere and perform the necessary function of voiding such legislation. In approaching issues involving the constitutionality of legislation, Courts should resolve doubt in favor of constitutionality rather than unconstitutionality. Reynolds Metal Co. v. Martin, 269 Ky. 378, 107 S.W.2d 251.

■ "An objection to the Act from a constitutional standpoint is that it violates Section 181 of our State Constitution in that that Section conferred power to the Legislature to authorize municipalities to levy license taxes but not income taxes. It is claimed that this is in effect an income tax. While it is true that the amount of the license fee each individual and each company must pay is measured by the income earned by those taxpayers and, therefore, the tax has some of the attributes of an income tax, this question is no longer an open one. In City of Louisville v. Sebree, 308 Ky. 420, 214 S.W.2d 248, our Court of Appeals held the almost identical type of tax levied by the City of Louisville to be constitutional as against this same contention.

"That the school district is a municipal corporation occupying the same position as the City of Louisville in this respect is obvious from the holdings in Board of Education of the City of Corbin v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951 and other cases therein cited.

■ "Some challenge is made concerning the fact that the Act empowers the school board to collect its own tax or to arrange to have it collected either by the Commissioners of the Sinking Fund of the city of the first class or, if not, by the county sheriff or other appropriate officer. It is mildly contended that this is contrary to Section 2 of the Constitution prohibiting absolute and arbitrary power.

"Authorization to levy a tax must carry with it an appropriate power to collect the tax. Historically, the Sheriff has collected taxes for school boards outside the corporate limits of the city. In Dickson, Sheriff v. Jefferson County Board of Education, 311 Ky. 781, 225 S.W.2d 672 [675], it was recognized that the collection of such taxes by the Sheriff was appropriate so long as only 'a reasonable charge is made against a local school tax for its collection.' There, the statute had authorized a fee of four percent which the Court of Appeals held to be an unreasonable fee and violative of the Constitution but the Court approved the charging of a reasonable fee of one percent for the collection. Applying the same reasoning to this controversy, I see no reason to hold that this provision of the Act does violence to the Constitution so

long as the charge made by the Commissioners of the Sinking Fund, the County Sheriff, or other appropriate officer for the service rendered to the school boards is reasonable.

■ "It was also claimed that since the Act calls for an election of the people before the tax can be imposed and provides that the expense of this election shall be met out of school funds, this particular provision violates Sections 180 and 184 of the Constitution requiring that sums of money produced by taxation for school education shall be used for no other purpose. This was the contention made in the Dickson case, supra, i. e.: that these Sections of the Constitution were violated because a part of the school fund was paid out as the expense of collecting that fund. Just as the argument was rejected there, I think it should be rejected here. A reasonable cost of this election, the very purpose of which is to permit the people to determine whether additional funds will be made available for school purposes, does not, in my opinion, constitute a diversion of funds from school purposes.

■ "The argument is advanced that persons who work in one school district but reside in another school district and whose children attend school in the district of the residence will have to pay occupational license tax to the district other than the one that educates their children. This is advanced as being a deprivation of property without due process. A similar problem was raised in the Reynolds Metal case, supra, in which the state income tax was held constitutional. There, the contention was made that non-residents were required to pay tax although domiciled elsewhere. The Court said [269 Ky. 378, 107 S.W.2d 259]:

" 'The tax is plainly a contribution exacted from those domiciled or doing business in the state for the purpose of defraying the expenses of government, measured by the income they received, and is paid for the benefits of the government, which enables them to live in peace, and security, to make, receive, and enjoy the income.'

■ "It has never been the rule that the tax burden has to be proportioned equally to the benefits received by the taxpayer. With respect to the present ad valorem tax levied by the school districts, many property owners who have no children pay this tax. Many other property owners reside outside of the district in which their property is located. Thus, the tax benefits are not equal to the tax burden.

"Some individuals reside in the City of Louisville and desire that their children attend City of Louisville schools, but find that, although annexed to the City, their residences still remain a part of County school districts. These same individuals may earn their living in the City of Louisville district and, therefore, may in the future have to pay occupational tax to the City Board of Education, while still sending their children to the County schools. I can see where this situation might strike the individual taxpayer caught in this position as being unfair or at least an undesirable state of affairs. Nevertheless it is not violative of any constitutional provision, and constitutes only an additional reason favoring eventual consolidation of City and County boards of education so that the problem can be solved on a community-wide basis.

■ "Vigorous challenge was made to the constitutionality of the exemption contained in the Act by which companies which pay ad valorem tax and franchise taxes, as well as insurance companies, banks, trust companies, combined bank and trust companies, and combined trust, bank and title companies are exempt from the imposition of the tax. An almost identical provision was contained in the Act authorizing the City of Louisville occupational tax, and, at least impliedly approved by the Court of Appeals in the Sebree case. The question was more directly challenged in the Reynolds Metal case, supra, and thoroughly discussed by Judge Dietzman in the majority opinion. A very similar classification was held not to be violative of the Constitution.

■ "The closest question presented by this litigation, in my opinion, is whether the Act violates Section 59 of the Constitution of Kentucky, prohibiting special or local legislation. As written, the Act applies only to boards of education in a county containing a city of the first class. The argument was vigorously presented that school boards in many counties of the State, other than Jefferson County, are in the same dire need of additional revenue and this legislation, therefore, is not based upon a reasonable classification distinguishing Jefferson County from other counties.

"Among other authorities, counsel for the taxpayer has cited Reals v. Courson [349 Mo. 1193], 164 S.W.2d 306, a Missouri case. The facts in that case are strikingly similar to those here involved and the Missouri Court struck down similar legislation as unconstitutional. The Missouri Court, however, placed great emphasis upon the fact that not only did that legislation apply to only one county in Missouri by its very terms, but also it was so framed that under no circumstances could it ever apply to any other county. Only one county fell within the statutory classification of a population between 200,000 and 450,000. The statute was enacted after the 1940 census and, by its terms, was to expire before the 1950 census, making it impossible for any other county ever to qualify. The statute before me does not have this restrictive feature. While it is not probable that another city will qualify as a first-class city in Kentucky at any time in the immediate future, nevertheless, it is always possible and the statute would then be applicable to more than one county.

■ "Also, the Missouri Court has apparently adopted, along with Pennsylvania, a stricter definition of what constitutes 'local' and 'special' laws as distinguished from 'general' laws than has Kentucky. Compare the statement in the Reals v. Courson, (349 Mo. 1193 [164 S.W.2d 306, 307]) opinion:

" 'In 1880 we adopted Pennsylvania's distinction between our definition of "special" and "general" laws. "A

statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special' " '.

With the statement in Somsen v. Sanitation District No. 1 of Jefferson County, 303 Ky. 284, 197 S.W.2d 410 [412] in which our Kentucky Court of Appeals said:

" 'We have long since held that a legislative enactment is not necessarily local nor repugnant to Section 59 of our Kentucky Constitution because such enactment applies to only one class or group of subjects, provided that the classification thus made is not unreasonable nor arbitrary.'

"It is significant that in the Reals v. Courson, (349 Mo. 1193 [164 S.W.2d 306]) case, reliance was had on previous Missouri opinions which had treated laws pertaining to sewerage and drainage districts as being 'special' laws whereas our Sonsen case specifically rejected that contention.

"The more liberal rule applied in Kentucky is also discussed in Allison v. Borders, 299 Ky. 806, 187 S.W.2d 728, wherein an act providing for the establishment of public road districts affecting only counties containing cities of the first class was held not to be local legislation violative of the Constitution.

■ "Facts were disclosed to the Court in argument of which I can take judicial notice. There has been a mushrooming growth of the City of Louisville requiring a most unusual amount of building of new schools. It might be contended that other school districts are also faced with this same problem but I believe the degree to which they are faced with it is not nearly so great as in Jefferson County. In the metropolitan area of Jefferson County salaries generally are higher than in the more rural counties. Our school boards find that, in order to retain teachers and other personnel on the payroll, they must compete with salaries paid by other local employers. Thus, there is a reasonable basis for considering Jefferson County in a different

class in respect to the needs of its school boards. All doubt should be resolved in favor of constitutionality rather than unconstitutionality. In this particular controversy, that rule is more applicable than usual. I say this because our constitutional law is bottomed upon the ultimate rights vested in the people. Here, no tax can be imposed unless a majority of those voting approve. It would be wrong, I think, for the Courts to deprive the people of the right to vote on this important issue.

"One question still remains and that is whether the proposed method of submitting the question to the voters, as indicated in the resolution adopted by the Louisville Independent School District filed with this complaint as Exhibit No. 2, will be a valid presentation. While the question is lengthy and not as concise as is desirable, and while it is subject to the objection that it does not explain to the voters that certain companies such as banks and trust companies will be exempt from the tax, I believe it will be sufficient to apprise the voter of the issue confronting him."

The judgment is affirmed.