**Joe VALLA et al., Appellants,**

**v.**

**PRESTON STREET ROAD WATER DISTRICT #1 OF JEFFERSON COUNTY, Kentucky, et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 5, 1965.

District No. 1 of Jefferson County, Kentucky (hereinafter called Preston District), and to purchase at a 12% premium all the outstanding revenue bonds of that and two other water districts.

The water company is a private corporation created in 1854 by legislative act. All of its common stock is owned by the City of Louisville, which also has the legal title to the company's physical properties and will in the same manner receive title to the facilities of Preston District under the terms of the contract between Preston District and the water company. See Burkholder v. City of Louisville, Ky., 276 S.W.2d 29 (1955). The city is a party to the contract.

Its contract with Preston District obligates the water company to acquire $617,000 in outstanding revenue bonds of the district, all of which are held by Royal Neighbors of America, an Illinois corporation. Royal Neighbors also owns the outstanding revenue bonds, totalling $2,238,000, of two other water districts operating in Jefferson County, which we shall call the Auburndale and Louisville Extension districts. The water company plans at some time in the future to absorb the Auburndale and Louisville Extension districts, and it has contracted with Royal Neighbors to purchase the outstanding bonds of all three districts at $1,120 per $1,000 bond. These obligations carry various interest rates and mature annually over periods extending to 1986. The Preston District bonds will be cancelled. The Auburndale and Louisville Extension district bonds probably will be held as investments until those districts are absorbed by the water company, but may be sold if the company sees fit. According to expert testimony they will be a prudent investment at the contract price.

The funds necessary for the bond purchase from Royal Neighbors, being some $3,200,000, will be derived from a current $18,000,000 water revenue bond issue of the City of Louisville. The authority for this bond issue is the same ordinance approved

Herman E. Frick, Matt L. Garlove, Louisville, for appellants.

Robert L. Sloss, Stuart E. Lampe, Eugene H. Alvey, William Davis, Hector E. Rose, Thomas L. Ray, Henry R. Heyburn, Ernest C. Pepples, Jr., Louisville, for appellees.

PALMORE, Judge.

Joe Valla and others, as class representatives of the citizens, taxpayers and property owners of the City of Louisville, appeal from a judgment of the Jefferson Circuit Court declaring valid certain contracts pursuant to which Louisville Water Company (hereinafter called the water company) proposes to absorb Preston Street Road Water

in Burkholder v. City of Louisville, Ky., 276 S.W.2d 29 (1955).

The proof demonstrates beyond cavil that the proposed merger is essential to the achievement of a water supply system sufficient to the reasonably anticipated growth and development of the Louisville area. Indeed, we can take judicial notice that such a unification would seem indispensable to orderly planning and efficient, economical service. The most serious objections raised in this suit are of a technical nature.

The contract between the water company and Preston District expressly provides that the district's customers are third party beneficiaries and shall be entitled to enforce its terms. Preston District itself agrees to effect a dissolution by petition to the Jefferson Circuit Court. This raises the first point in controversy: Is there any authority for the dissolution?

Preston District is a public corporation, sometimes called quasi-municipal, existing by virtue of KRS Chapter 74. There is no statute providing in so many words for the "dissolution" of such a corporation. It may be conceded without argument that the formation and dissolution of corporations, including municipal corporations, is a matter of legislative prerogative. Cf. Jewell v. City of Lake Louisvilla, Ky., 339 S.W.2d 169, 170 (1960). However, the appellees submit that under a reasonable construction of KRS 74.110 the county court does have statutory power to dissolve a water district, and we agree.

KRS 74.110 provides a method by which the "territorial limits of an established water district may be enlarged or diminished." Appellants argue that diminution does not include extinction, but we perceive no reason why an unlimited power of territorial diminution cannot be exercised to the point of nothingness. And if so, surely a corporate dissolution would be no more than a normal, reasonable and necessary concomitant of such authority. We are not disposed to believe that the legislature ever intended or would intend the empty effigy of a corporate creature to be strung up throughout eternity on the end of an aimless technicality.

Commissioner of Fire District No. 12 v. Ziegenbalg, 16 N.J.Super. 607, 85 A.2d 223 (1951), cited by appellants, holds merely that when a statute directs a method of dissolution it cannot be accomplished in a different manner. The question before us in this case is whether the statute provides any method of dissolution. We hold that KRS 74.110 does authorize and prescribe the procedure for a dissolution if and when it is incident to a substantially complete territorial diminution.

The occasion for a complete territorial diminution of a water district once established as a going concern probably could never arise except in connection with or following a disposition of all its assets and an assumption or satisfaction of its liabilities. Under the contract in question all the assets of Preston District will be transferred to the city or the water company, and the water company will assume its liabilities (all of which, other than current items, are payable solely from future revenues). Appellants contend that Preston District has no authority to make such a contract. KRS 74.070 empowers its governing body to "make contracts for the water district with municipalities for a water supply * * * and do all acts necessary to carry on the work." The district has no reason for existence but to secure for and to its patrons a water supply and distribution system. Preston District now purchases 90% of its water supply from the water company. The contract by which the city-owned water company agrees to assume the district's function guarantees continued service and will result at once in annual savings of $200,000 to the district's customers. In our opinion it comes within the purpose and purview of the authority granted by KRS 74.070.

KRS 74.290 empowers a water district to borrow money by issuing its rev-

enue bonds. Subsection (2) of the statute prohibits bonds so issued from bearing a greater interest rate than 6%. Subsection (3) provides that "such bonds shall be negotiable and shall not be subject to taxation," and further on in the same subsection this sentence appears: "The bonds shall not be negotiated on a basis to yield more than six percent." Relying on the technical distinction between "issuing" and "negotiating" commercial paper, appellants take the position that this latter sentence has the effect of preventing Royal Neighbors from selling any of the water district bonds at a price that will encompass a yield of more than 6%. Granted that the purpose may already have been amply served by the interest limitation in subsection (2), we cannot believe that the legislature intended here to concern itself with anything other than the cost to the water district. What beneficial objective could be gained by restricting the price at which the buyer of bonds may sell them in the market place? Giving faith to the maxim that the legislature will be presumed not to have intended an absurd thing, we are of the opinion that the limitation in question applies only to the cost that the issuing district is permitted to pay for the use of the borrowed money.

■ The next argument is that the use of funds borrowed by the City of Louisville, through its $18,000,000 revenue bond issue, to finance the water company's purchasing the outstanding bonds of the Auburndale and Louisville Extension districts constitutes either an obtaining or appropriation of money by the city for, or a loan of its credit to, the Auburndale and Louisville Extension districts in violation of Const. § 179. That the city can raise money for the water company, which it owns and operates, without violating this constitutional inhibition is not questioned, nor does it appear to have been questioned in Burkholder v. City of Louisville, Ky., 276 S.W.2d 29 (1955). Appellants contend that the city could not have purchased the bonds of these two water districts on their original issue and that there is no distinction between that

and a purchase from an intermediate holder. Both of these theories are unsound, at least insofar as they relate solely to Const. § 179.

Const. § 177, which provides that the Commonwealth cannot give, pledge or lend its credit, is analogous to that portion of Const. § 179 which proscribes a city's lending of its credit. In Industrial Develop. Auth. v. Eastern Ky. Reg. Pl. Com'n, Ky., 332 S.W.2d 274 (1960), it was held that a loan of public money is not a pledge or loan of public credit. The purchase of bonds is a loan of money, not a loan of credit. The purchaser becomes a creditor, not a debtor. Id. at p. 278.

■ The restriction of Const. § 179 against obtaining or appropriating money for others applies to donations to projects from which no benefit will be received by the city or in which it may not independently engage. Cf. Board of Education v. City of Corbin, 301 Ky. 686, 192 S.W.2d 951 (1946); Kesselring v. City of Louisville, Ky., 257 S.W.2d 596 (1953). Quite aside from the question of whether it could legally do so, the city is neither appropriating nor donating money for or to the Auburndale and Louisville Extension districts. Even if the city were the first purchaser of their bonds, the transaction would amount to nothing more than a loan, and although a question might arise as to whether it satisfied the requirements of KRS Chapter 58, it would not run afoul of Const. § 179.

We might go on to suggest several more reasons why the transaction does not involve Const. § 179, but one will do. The fact is that the raising of money by the city for the purpose of acquiring previously issued and outstanding bonds of the Auburndale and Louisville Extension districts cannot in any sense be "for" the two districts, for the plain reason that it will not benefit or affect either of them one way or the other. They have their money already. They will return the same principal and pay the same interest whether the bonds are held by Royal Neighbors or by the water com-

pany. This simply is not a case in which Const. § 179 is relevant.

■ The burden of the remaining arguments by appellants is that for several reasons the project is unfavorable from a business standpoint to the water company, is a "bad bargain," and that its governing officers are therefore guilty of an abuse of discretion. No court should, and this court will not, commit the folly of matching business acumen with the thoroughly competent and informed individuals who planned and recommended the project in behalf of the city and water company and whose judgment appears to be so clearly supported by the evidence.

The judgment is affirmed.